# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs September 7, 2011

## CURTIS BEECHEM v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 05-08823      Chris Craft, Judge**

_____

**No. W2010-02271-CCA-R3-PC  - Filed July 2, 2012**

_____

Petitioner, Curtis Beechem, pled guilty to first degree murder and attempted aggravated robbery.  He received sentences of life for first degree murder and four years for attempted aggravated robbery to be served concurrently.  In this appeal from the denial of the post-conviction relief, Petitioner asserts that his guilty plea was not knowing and voluntary because the trial court and trial counsel misinformed him as to the length of his sentence. He also contends that he received ineffective assistance of counsel because counsel misinformed him as to the length of his sentence, and trial counsel failed to object to a statement made by the post-conviction court concerning the sentence.  After a thorough review of the record, we conclude that Petitioner has failed to show that his guilty plea was not knowing and voluntary or that he received ineffective assistance of counsel. Therefore, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which ALAN E. GLENN and JEFFREY S. BIVINS, JJ., joined.

Michael Working, Memphis, Tennessee, for the appellant, Curtis Beechem.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Abby Wallace, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

## I. Background

At the plea submission hearing, the Assistant District Attorney General gave the following information as a factual basis for the plea:

The state would prove in this case, your Honor, that on Tuesday, July 12th at approximately 3:30 AM a person walked into the Mapco at 4311 New Allen and had a gun in their possession. The clerks Wade Armstead and Jerome Vick struggled with the suspect who was attempting to rob the store at that time. Jerome Vick was shot by the suspect and died on the scene. There was video surveillance at the store, it was captured on two different cameras that had different angles of the incident. We have that video in our possession, we have provided it to defense counsel. And there was also fingerprints and blood found at the scene. That DNA evidence and fingerprint evidence all led us to believe that Curtis Beechem was the suspect in this case. That proved positive through fingerprints and through DNA, that was also provided to defense counsel.

Mr. Curtis Beechem did give a confession to a friend and we have that person as a witness in this case. Mr. Jerome Vick died due to the fact that he was shot. Curtis Beechem is the shooter in this case.

## II. Post-Conviction Hearing

Petitioner testified that when he pled guilty on August 30, 2007, he thought that he was "signing for a twenty-five-year sentence" because that is what his trial attorneys told him. He knew that he was charged with first-degree murder but thought that he would be receiving a sentence for a lesser-included offense. He said, "Hopefully it was supposed to have been second degree murder." Petitioner acknowledged that during the guilty plea submission hearing, the trial court asked if he wished to accept the recommendation of life in the penitentiary to which the Petitioner replied, "I wish I could get it dropped to a lesser charge." However, he still claimed that he thought life was a "lesser charge." Petitioner admitted that during the hearing, the trial court again asked if he wished to accept the offer of "life in the penitentiary, really fifty-one years," and he replied, "yes, sir."

Petitioner testified that he thought he would be eligible for parole sometime before fifty-one years because his trial attorneys told him that the law concerning a life sentence would eventually change. He said that after talking with post-conviction counsel, he was

aware that he would be eligible for parole, fifty-one years from the time of his arrest. Petitioner admitted that during the guilty plea submission hearing, he told the trial court that his attorneys had investigated the case and had done a good job.

On cross-examination, Petitioner admitted that he told police that he shot and killed the victim. He told his trial attorneys that his defense was that the gun discharged during a struggle, and he did not intend to kill the victim. However, Petitioner claimed that his trial attorneys never discussed a defense with him. Petitioner claimed that although he pled guilty and signed the paperwork, he did not know what he was doing at the time. He thought that he was pleading guilty to second degree murder with a twenty-five year sentence. Petitioner testified that during the guilty plea submission hearing, he told the trial court that it was his decision to plead guilty. He also admitted that he called trial counsel the day before the suppression hearing and said that he wanted to accept the State's plea offer. Petitioner agreed that the trial court "somewhat" advised him of the rights that he was giving up by pleading guilty. He acknowledged that during the guilty plea hearing, the trial court advised him that he would receive a life sentence, "really fifty-one years."

Petitioner testified that several months before his plea, he received a copy of police reports, affidavits, and all of the "paper evidence" that the State had against him. He also watched the video of the crime. Petitioner admitted that before entering his plea, he was aware that the State had a video of the crime, an eyewitness, his confession, and his fingerprints. Petitioner testified that his attorneys never reviewed any paperwork with him before entering the plea, and they did not advise him of the rights that he was giving up. However, he admitted that the trial judge advised him of his rights during the guilty plea hearing. He also admitted that he told the trial judge that he had read the paperwork that he signed.

Trial counsel testified that she was appointed to represent Petitioner on December 14, 2006. She received discovery from the State and a plea offer. She mailed discovery to Petitioner, along with an intake interview and the preliminary hearing. Trial counsel testified that she reviewed the plea offer with Petitioner. She also reviewed the intake interview, his statement, and the statement "to the person he was living with which all indicated it was an accident and [they] talked about that." There was no video of the crime at the time, so trial counsel attempted to negotiate "a lesser offer with [the State] to no avail."

Concerning Petitioner's charges, trial counsel testified:

He was charged with criminal attempt murder perp, which I gave that - - a criminal attempt especially aggravated robbery and criminal attempt agg. robbery.

-3-

The criminal attempt murder perp case law came down that it was not a valid charge and we talked to [Petitioner] about that. And I actually gave that issue to [co-counsel] to handle.

She said that co-counsel filed a motion regarding the charge.

Trial counsel testified that Defendant gave three different statements concerning the offense. She and co-counsel discussed the claim that Petitioner and the victim had argued over the gun and that the shooting was accidental. She said: "And then once we got our hands on the video and we all watched that, I think it became clear to [Petitioner] and [co-counsel] and I that that really was not going to be an option of a defense because of what was on the video." Trial counsel noted that the video contradicted Petitioner's statement. They watched the video on April 20, 2007, and then began talking about a guilty plea to life and what Petitioner's exposure would be at trial.

Trial counsel testified that after viewing the video of the offense with Petitioner, she and co-counsel told Petitioner that if he went to trial and received a life sentence, the "other stuff would stack on top of it, the other three charges and they were also going to file life without parole notice, . . . but basically out of the three of those options the life sentence was going to give him the least amount of time to do." Trial counsel testified that she told Petitioner that at one time in the past, a life sentence was twenty-five years, but she told him that it was now fifty-one years. She said:

> And, you know, that the law had actually changed on that and there was a possibility maybe that it might change. There was a possibility it wouldn't change but there is always that possibility out there that a life sentence, you know, due to jail overcrowding or some other political reason could be reduced from fifty-one. I mean, it could go up too, but, I mean it could be, could be changed back to twenty-five or something between twenty-five and fifty-one. So we did talk about that. But we were clear that at the time he was pleading to fifty-one years.

Trial counsel testified that no one told Petitioner that he was pleading guilty to a lesser charge of second degree murder, and second degree murder was never an option from the State. Trial counsel also testified that no one told Petitioner that he would receive a twenty-five year sentence. She said that Petitioner was always told that he was pleading to life with possible parole release in fifty-one years.

Trial counsel testified that she completed the written paperwork for the plea with Petitioner and that she reviewed the paperwork with him. She also explained his rights and the rights that he was giving up by pleading guilty.

On cross-examination, trial counsel testified that she told Petitioner it was possible that a life sentence might go back to being twenty-five years. She said: "You know, it was at twenty-five years at one time, it's possible they could change it. It's possible it could become more. It's just a possibility but right now fifty-one." Trial counsel also noted that the State intended to file a notice for a sentence of life without the possibility of parole if the case went to trial. She agreed that the Petitioner could have received concurrent sentences on the remaining charges, but she did not "feel based on the violent nature of the crime and the two victims and what had transpired on the video that that would probably happen."

Concerning a life sentence, trial counsel testified: "Fifty-one years with the possibility of parole at fifty-one years, which I found out is incorrect, that you're actually not on parole." She said that in fifty-one years: "I guess they decide - - I guess if you earn all your good and honor credit you can get out at fifty-one years." Trial counsel always knew that there was no automatic release at fifty-one years. She admitted that in August of 2007, she would have told Petitioner that he would have to serve fifty-one years before he could be released on parole.

## III. Standard of Review

On appeal, Petitioner asserts that his guilty plea was not knowing and voluntary because of the ineffective assistance of his trial counsel and because both the trial court and trial counsel misinformed him as to the length of his life sentence.

In a claim for post-conviction relief, the petitioner must show that his conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn. Code Ann. § 40-30-103. Petitioner bears the burden of proving factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009). The post-conviction court's factual findings "are conclusive on appeal unless the evidence preponderates against those findings." *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Upon review, this court will not reweigh or reevaluate the evidence below, and all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial court, not this court. *Momon v. State*, 18 S.W.3d 152,156 (Tenn. 1999).

On appeal, the post-conviction court's findings of fact are entitled to substantial deference and are given the weight of a jury verdict. They are conclusive unless the evidence

preponderates against them. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). A post-conviction court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 457 (Tenn. 2001). Our supreme court has "determined that the issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact, ...; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999).

When a petitioner seeks post-conviction relief based on the alleged ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient, and (b) that the deficient performance was prejudicial. *See Powers v. State*, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997).

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. *See id.* However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. *See Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate the principle that guilty pleas be voluntarily and intelligently made. *See Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (citing *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)). As stated above, in order to successfully challenge the effectiveness of counsel, Petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *See Baxter*, 523 S.W.2d at 936. Under *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Petitioner must establish: (1)

deficient representation; and (2) prejudice resulting from the deficiency. However, in the context of a guilty plea, to satisfy the second prong of *Strickland*, Petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

When analyzing a guilty plea, we look to the federal standard announced in *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and the State standard set out in *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977). *State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999). In *Boykin*, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242. Similarly, our Tennessee Supreme Court in *Mackey* required an affirmative showing of a voluntary and knowing guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. *Pettus*, 986 S.W.2d at 542.

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. *Pettus*, 986 S.W.2d at 542; *Blankenship*, 858 S.W.2d at 904.

On appeal, Petitioner argues that both trial counsel and the trial court incorrectly advised him concerning his life sentence. He contends that trial counsel erroneously advised him that he would be eligible for release on parole after serving fifty-one years and that the trial court erroneously advised him during the guilty plea submission hearing that he was pleading to "life in the penitentiary, really fifty-one years . . ." Petitioner also argues that trial counsel was ineffective for failing to object to the trial court's statement.

The State asserts that Petitioner has waived these claims because they have not been raised before the post-conviction court and are raised for the first time on appeal. Initially, we agree with the State that Petitioner has waived his claim concerning trial counsel's failure to object to the trial court's statement that Petitioner was pleading guilty to a life sentence, "really fifty-one years." This issue was not raised in Petitioner's post-conviction petition or during the hearing on the petition. An issue not presented in a petition for post-conviction relief may not be raised for the first time on appeal. Tenn. Code Ann. § 40-30-106(g); *State v. Johnson*, 970 S.W.2d 500, 508 (Tenn. Crim. App. 1996)("Issues raised for the first time on appeal are considered waived.").

As for Petitioner's claim that both trial counsel and the trial court erroneously informed him concerning his life sentence, we find that this claim was raised before the post-conviction court. In his original petition, Petitioner argued that his guilty plea was not knowingly and voluntarily entered because trial counsel erroneously informed him that he would only have to serve twenty-five full calendar years of the life sentence and would then be eligible for parole thereafter. However, Petitioner's counsel made the following argument at the post-conviction hearing:

> Your Honor, I have been up here at the table and it's been my statements, [trial counsel's] statements are in the record. And frankly I'm not sure that we can say here today that [Petitioner's] sentence was explained properly to him. [Trial Counsel] has stated on the record she told him he would be eligible for parole in fifty-one years. And, well, we know that is not correct.
>
> We also know from the transcript that Judge Higgs stated on Page 9 of the guilty plea, do you wish to accept this offer, life in the penitentiary, really fifty-one years. And really it's not fifty-one years. Really there's a possibility to get out at fifty-one years with good behavior credits. It's not fifty-one years.
>
> And you know obviously the prejudice prong in this, how is [Petitioner] prejudiced. Maybe he gets out of prison when he's seventy-five, maybe he gets out of prison when he's eighty-five. Well, you know, nine years is a lot of prejudice. Nine years is a big difference. Nine years ago I was a college football coach that wasn't even thinking about applying to law school. Nine years ago I wasn't, you know, a father. I lived in another state. A lot of things. Nine years is no small amount of time especially when it's served in a penitentiary.
>
> And, you know, frankly, that proof and put on by the state is really not undisputed that both [trial counsel] and the Court told him fifty-one years and that's not really the sentence he signed to. As to whether or not he's confused about how much time, whether he thought it was fifty-one years he's eligible for parole, if he's really going to get out in twenty-five years or whatever that, and I leave that to the Court. There's no document that he signed that says fifty-one years. The judgment sheet says life.
>
> As to whether or not it was a knowing and voluntary, you know, knowing and intelligent, well I'm going to say no. Because he's been advised by counsel fifty-one years you're eligible for parole, that's not correct. He's been told by the Court it's really a fifty year - - fifty-one year sentence. That's not correct.

So, number one, it's not [a] knowing and intelligent plea which is an absolutely constitutional challenge. And number two, he hasn't been represented competently by counsel, effectively by counsel, and has been prejudiced by perhaps up to another nine years of his sentence from what he thought he was entering into.

And, you know, [Petitioner] and [trial counsel] did agree that there was some discussion of a [sic] twenty-five years. Maybe perhaps he misunderstood what [trial counsel] was saying. You used to get [a] twenty-five year sentence or maybe it will go back to a twenty-five year sentence for overcrowding. [Petitioner] thought it was a fifty-one year sentence and he was eligible for parole at twenty-five years. But all of that aside, if [Petitioner] is totally wrong and we take [trial counsel] at her word and Judge Higgs and right there in the transcript fifty-one years, not really fifty-one years. So we have without question, even if we take the state's theory here someone who's entered into a plea unknowingly and unintelligently as what his sentence is.

This argument was based on evidence presented at the post-conviction hearing and comments by the post-conviction court. At the post-conviction hearing, trial counsel testified that she told Petitioner that he would be pleading guilty to a sentence of life with the possibility of parole release in fifty-one years. Concerning the meaning of a life sentence, trial counsel testified: "Fifty-one years with the possibility of parole at fifty-one years, which I found out is incorrect, that you're actually not on parole." She testified that in fifty-one years, "I guess they decide - - I guess if you earn all your good and honor credit you can get out at fifty-one years." Trial counsel said that in August of 2007, she would have told Petitioner that he would have to serve fifty-one years before he could be released on parole and that she knew that there was no automatic release at fifty-one years.

The post-conviction court also, during the evidentiary hearing, commented on the meaning of a life sentence. In particular, the court pointed out:

And just to stop you so I can make it clear for the record. As of July the 1st of 1993 they created life without parole. Then on July the 1st, 1995, no, I'm sorry, that was March, it was March of '93. July 1 of 1995 they removed all parole for murder and murder in the second degree, all of it.

So our Supreme Court in a case State versus Charles Golden, which I tried, our courts said that life is figured at sixty years and that although there's no parole for murder, you're entitled to fifteen percent sentence credits. And fifteen percent of sixty years is nine years. So that if someone accumulated the

maximum sentence credits at fifty-one years, they would have flattened or served a life sentence. And that's how they computed that. There would be no parole or supervision after the person flattened the sentence.

But after 1993, I mean, after 1995 there is no parole for murder in the first degree or murder in the second degree.

When questioned by post-conviction counsel on whether a life sentence would be sixty years, the post-conviction court further said:

No, no, a life sentence is a life sentence but as far as computing release dates on violent one-hundred percent crimes, which murder and murder second became when they passed the violent one hundred percent offenses act, what you do is you can be released after you have served eighty-five percent of your sentence. And since life by statute is figured at sixty years for sentence credit purposes, if one earns the maximum credits one can be released after fifty-one years.

That's never happened because anyone convicted of murder after '95 it's going to be fifty-one years before we find out what's going to happen. But the statute says they will have served their time if they get or allowed the fifteen percent credits and that nothing else could reduce those credits below fifteen percent. So that's where that fifty-one years comes from.

So on our jury instructions for murder we charge not parole but if there's no possibility of release for fifty-one years when that charge is charged to the jury in a murder trial.

\* \* \*

. . . You have to earn fifteen percent credits. Like every other one hundred percent violent offense, if you have disciplinary problems they don't need, they don't have to give you the credits. But according to statute on a one hundred percent violent offense they cannot release you until you've done eighty-five percent of your sentence. And there is no parole for, for instance, especially aggravated robbery or another one hundred percent crime. So that once they're released they're released but there is no parole. Then you get into supervision for life in sex crimes and things like that. But murder is not one of those supervision for life crimes.

-10-

For offenses committed prior to July 1, 1995, the release eligibility for a defendant receiving a life sentence was governed by Tennessee Code Annotated section 40-35-501(h)(1) which provides:

Release eligibility for each defendant receiving a life sentence of imprisonment for life for first degree murder shall occur after service of sixty percent (60%) of sixty (60) years less sentence credits earned and retained by the defendant, but in no event shall a defendant sentenced to imprisonment for life be eligible for parole until the defendant has served a minimum of twenty-five (25) full calendar years of the sentence, notwithstanding the governor's power to reduce prison overcrowding pursuant to title 41, chapter 1, part 5, any sentence reduction credits authorized by § 41-21-236 or any other provision of law relating to sentence credits. A defendant receiving a sentence of imprisonment for life for first degree murder shall be entitled to earn and retain sentence credits, but the credits shall not operate to make the defendant eligible for release prior to the service of twenty-five (25) full calendar years.

For offenses committed after July 1, 1995, subsection (i)(1) was later added, which states:

(1)   There shall be no release eligibility for a person committing an offense, on or after July 1, 1995, that is enumerated in subdivision (i)(2). The person shall serve one hundred percent (100%) of the sentence imposed by the court less sentence credits earned and retained. However, no sentence reduction credits authorized by § 41-21-236 or any other provision of law, shall operate to reduce the sentence imposed by the court by more than fifteen percent (15%).

The offenses to which subsection (i)(1) applies include first degree murder. Tenn. Code Ann. § 40-35-501(i)(2); *see Vaughn v. State*, 202 S.W.3d 106, 118 (Tenn. 2006).

In considering Petitioner's claim that trial counsel told him that he would serve only twenty-five years of his life sentence before becoming eligible for parole, the trial court essentially considered Petitioner's additional claim that the trial court and trial counsel erroneously advised him that a life sentence was fifty-one years. In the order denying post-conviction relief, the trial court noted in part:

As a practical matter, a sentence of life is figured for sentence credit purposes as 60 years, and 15% of 60 years is nine years. Therefore, it is possible to be released having served a life sentence after 51 years, if the defendant earns all available sentence credits authorized by § 41-21-236.

The post-conviction court ultimately found that Petitioner's plea was "freely and voluntarily made, and knowingly and intelligently entered."

The record does not preponderate against the post-conviction court's findings. As pointed out by the State, the statements by the trial court and trial counsel that a life sentence is fifty-one years is not an inaccurate statement of the law. Under current law, a life sentence is figured at sixty years, less fifteen percent reduction credits, which is fifty-one years. *See* Tenn. Code Ann. § 40-35-501 (h)(1) and (i)(1)-(2). The record is clear that Petitioner was never told that he would serve less than fifty-one years of his life sentence, and trial counsel testified that she advised Petitioner that he was pleading guilty to life with **possible** parole release in fifty-one years. We note that the post-conviction court specifically stated that it found the testimony of trial counsel to be "very credible" and that of Petitioner to be not credible. Petitioner knew that he was pleading guilty to a life sentence with the possibility of parole and that he would be required to serve a minimum of fifty-one years before being eligible for release.

Furthermore, as previously noted, in cases of ineffective assistance of counsel involving a guilty plea, the petitioner must show prejudice by demonstrating that, but for counsel's errors, he or she would not have pled guilty but would have insisted on going to trial. *See Hill*, 474 U.S. 52 at 59; *Bankston v. State*, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991). We have carefully reviewed Petitioner's testimony at the post-conviction hearing, and he **never** testified that absent trial counsel's alleged errors, he would not have pled guilty and gone to trial. Therefore, the element/factor of prejudice can only be shown by circumstantial evidence. Two of the four counts of the indictment were dismissed as part of the plea agreement: attempted first degree murder of a victim other than the one who died, and attempted especially aggravated robbery of the victim who died. Also, trial counsel testified that the State had given verbal notice of its intent to file notice to seek the more serious punishment of first degree murder, to-wit: life punishment with no possibility of parole if the case had gone to trial. Furthermore, trial counsel testified that there was a substantial likelihood that if Petitioner had been convicted of multiple offenses at trial, the sentence would likely be served consecutively rather than concurrently.

With the possible adverse results to Petitioner if he had gone to trial and absolutely **no** direct evidence by Petitioner that he would have not pled guilty, and would instead have gone to trial, Petitioner failed to prove prejudice even if counsel was ineffective.

We conclude that Petitioner has failed to show by clear and convincing evidence that his guilty plea was involuntarily or unknowingly entered, that he received ineffective assistance of counsel or that he was prejudiced by any alleged ineffective assistance of counsel. Petitioner is not entitled to relief in this appeal.

## CONCLUSION

After a thorough review, we affirm the judgment of the post-conviction court.

_____
THOMAS T. WOODALL, JUDGE